Carolyn Chan – SBN 147978
2701 Del Paso Rd., Ste. 130-#373
Sacramento, CA  95835
Telephone: (916) 484-4020

Jeffery J. Shaver – SBN 18135850
White Shaver
11200 Westheimer, Ste. 200
Houston, TX  77042
Telephone: (713) 953-0860

Attorneys for Plaintiff,
AMERICAN CANINE FOUNDATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CANINE FOUNDATION, | **CASE NO. C-06 4713- MHP** |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| BEN SUN, D.V.M, the Public Health Veterinarian for the State of California; THE CALIFORNIA DEPARTMENT OF HEALTH SERVICES; THE CALIFORNIA HEALTH AND HUMAN SERVICES AGENCY; CITY AND COUNTY OF SAN FRANCISCO; THE COUNTY OF LOS ANGELES and DOES 1 to 50, inclusive, | |
| Defendants. | |

-------------------------------------------------------------------/

Plaintiff, American Canine Foundation (ACF) hereby alleges as follows:

1.      Plaintiff, American Canine Foundation brings this action seeking prospective

declaratory and injunctive relief against Defendants. As alleged in more detail in this

complaint, Plaintiff challenges the constitutionality and validity of California Senate Bill

861 now codified in California Food and Agricultural Code Section 31683 and California

acf2ndacomp0722

Health and Safety Code Sections 122330 and 122331 ("SB 861"), as well as San Francisco Ordinance number 268-05 and Title 10 of the Los Angeles County Code.

2.      Jurisdiction over this lawsuit is vested pursuant to 28 U.S.C § 1331, which provides jurisdiction of all civil actions arising under the constitution and laws of the United States, 28 U.S.C § 1343 which provides redress for deprivations under color of State law or ordinances, secured by the Constitution of the United States, and 28 U.S.C § 1367 under the principles of supplemental jurisdiction.  Jurisdiction also arises under 42 U.S.C. 1981, 42 U.S.C. 1982, 42 U.S.C. 1983; 42 U.S.C. 1988; 28 U.S.C. 2201 and 2202.

3.      The applicable procedural rules for Declaratory Relief and Injunctive Relief are Federal Rules of Civil Procedure, Rules 57 and 65.

4.      This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's state law claims arising under the California Constitution, statutes and common law because Plaintiff's claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

5.      Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C §1391(b) because SB 861 applies to the entire State of California; a substantial part of the events or omissions giving rise to the claim occurred in this district, including but not limited to the lobbying for SB 861, political activity related thereto and the signing of the bill*; and three of the five Defendants* are located in this district. It is expected that various laws in different cities and counties will be implemented, creating numerous venues for litigation, ( there are already numerous cities

2

which have named dog breeds, and or have implemented early mandatory spay/neuter for non-shelter dogs), however, Plaintiffs have selected the Eastern District Federal Court as a more centralized location and the majority of the witnesses intended to be called are in Sacramento, also the city of Sacramento is planning on passing a law based off of SB861 in July 2006, if they do, Plaintiff 's will seek to amend them to the complaint.

6. Plaintiff, American Canine Foundation is an organization based in the State of Washington, and has active members that are residents in the State of California. The American Canine Foundation is an interested party to these proceedings due to the legal issues presented in this action involving its members' rights and the protection of Constitutional rights and property. *Plaintiff's members have been impacted and harmed by the laws addressed in this complaint.*

7. Defendant, Ben Sun, D.V.M. is the Public Health Veteranarian of California, specifically charged with the responsibility and authority to ensure that all cities and counties that create ordinances under SB 861 comply with its requirements. Defendant Sun's obligations would naturally include necessary audits and investigation of the unconstitutional so called "programs" created by Defendants, the city and county of San Francisco and Los Angeles County.

8. *Defendant Sun is responsible for collecting dog bite data from all those who pass ordinances under SB861, it is a crucial and mandated part of SB861*. Defendant Sun is employed by the California Department of Health Services (CDHS), which is charged with overseeing and supervising the work performed by Defendant Sun. CDHS is part of the California Health and Human Services Agency (CHHSA).

9.      Defendant, city and county of San Francisco has passed an ordinance (268-05), described in more detail below, based on SB 861. San Francisco's mayor, Gavin Newsom, a proponent of defying laws with which he does not agree, promoted and pushed hard to pass SB 861.

10.     Defendant, the County of Los Angeles, passed an ordinance (Title 10), described in more detail below, based on SB 861and the _local police power_.

11.     The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named in this Complaint as Does 1 through 50, inclusive, are unknown to Plaintiff who therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the DOE Defendants is legally responsible in some manner for the events and happenings herein referred to, and that each one proximately caused damage thereby to Plaintiff as herein alleged. Plaintiff will amend this complaint by inserting the true names and capacities of the fictitiously named Defendants when the same are ascertained.

12.     California State Governor Arnold Schwarzenegger signed SB 861 on October 7, 2005. This law went into effect on January 1, 2006. SB 861 amended Section 31683 of the California Food and Agricultural Code (FAC section 31683) and added Sections 122330 and 122331 of the California Health and Safety Code (HSC sections 122330 and 122331.)

FAC section 31683 is part of Chapter 9 of Division 14 of the Food and Agricultural Code, a series of twenty-eight (28) statutes designed to regulate vicious and potentially dangerous dogs, and the owners who fail to contain or control them.

4

In the very first section of Chapter 9 (FAC section 31601) the Legislature acknowledged that the number and severity of dog attacks "are attributable to the failure of owners to register, confine, and properly control vicious and potentially dangerous dogs." This Chapter <u>was</u> completely devoid of discrimination against any dog breeds or mixed breeds; in fact as originally drafted, FAC section 31683 specifically stated that regulating dogs in a manner specific as to breed was <u>not allowed</u> under California law.

14.   FAC section 31683 <u>now reads</u> as follows:

> Nothing in this chapter shall be construed to prevent a city or county from adopting or enforcing its own program for the control of potentially dangerous or vicious dogs that may incorporate all, part, or none of this chapter, or that may punish a violation of this chapter as a misdemeanor or may impose a more restrictive program to control potentially dangerous or vicious dogs. Except as provided in Section 122331 of the Health and Safety Code, no program regulating any dog shall be specific as to breed.

15.   SB 861 changed FAC section 31683's anti-discrimination law, and now *specifically authorizes discrimination* against certain dog breeds under HSC section 122331, which reads as follows:

> (a) Cities and counties <u>may enact dog breed-specific ordinances</u> pertaining only to mandatory spay or neuter programs and breeding requirements, provided that no specific dog breed, or mixed dog breed, shall be declared potentially dangerous or vicious under those ordinances [Emphasis added.]

> (b) Jurisdictions that implement programs described in subdivision (a) <u>shall measure</u> the effect of those programs by compiling statistical information on dog bites. The information <u>shall</u>, at a minimum, identify dog bites by severity, the breed of the dog involved, whether the dog was altered, and whether the breed of dog was subject to a program established pursuant to subdivision (a). **<u>These statistics shall be submitted quarterly to the State Public Health Veterinarian</u>**. [Emphasis added.]

5

16.     In Health and Safety Code section 122330 the Legislature declares

the stated intent behind SB 861:

The Legislature finds and declares the following:

(a) Uncontrolled and irresponsible breeding of animals contributes to pet
overpopulation, inhumane treatment of animals, mass euthanasia at local
shelters, and escalating costs for animal care and control; this
irresponsible breeding also contributes to the production of defective
animals that present a public
safety risk.

(b) Though no specific breed of dog is inherently dangerous or vicious,
the *growing* pet overpopulation and lack of regulation of animal breeding
practices necessitates a repeal of the ban on breed-specific solutions and a
more immediate alternative to existing laws.

(c) It is therefore the intent of the Legislature in enacting this chapter to
permit cities and counties to take appropriate action aimed at eliminating
uncontrolled and irresponsible breeding of animals.

17.     Despite the convoluted and contradictory wording of SB 861, the

legislative history and language establish that the true intent behind this law was to single

out breeds or categories of canines (e.g. "pit bulls" in San Francisco) and label them

together as 'potentially dangerous or vicious' without regard to science, logic, or any

semblance of reason. Consideration   for the individual temperament of any dog

unfortunate enough to be subject to this discriminatory law is **completely**

**DISREGARDED.**

18.     Cities and counties in California have passed ordinances based on SB 861;

this includes but is not limited to the city and county of San Francisco and Los Angeles

County, which is claiming they *passed their law under* *the police powers*.

6

Under the authority provided by SB 861, named breeds of dogs, as well as mixed breed dogs, can be selected for mandatory altering at four (4) months of age. "Pit bulls," a widely misunderstood and misused label, and their owners are the victims of this discrimination in San Francisco. Under Ordinance Number 268-05 it is now a misdemeanor to own any of the following dogs (with only limited exceptions) if they have not been spayed or neutered: a) The American Pit Bull Terrier; b) The American Staffordshire Terrier; c) The Staffordshire Bull Terrier; or d) Any dog displaying the physical traits of any one or more of the above breeds; or e) Any dog exhibiting those distinguishing characteristics that conform to the standards established by the American Kennel Club ("AKC") or United Kennel Club ("UKC"). This broad sweeping, vague language applies to a wide variety of dogs, both purebred and mixed. There is no grandfather clause in this ordinance.

19.   Defendant, Los Angeles County has gone even further by amending Title 10 of the Los Angeles County Code so that it now targets numerous purebred dogs (including but not limited to the popular Jack Russell Terrier and rare dog breeds) and mixed breed dogs, mandating their sterilization the moment they reach the age of four months. Violations of this ordinance are punishable as an infraction for the first violation, resulting in a fine up to $250.00. The second violation is a misdemeanor punishable by imprisonment in the county jail not to exceed six months or by a fine not to exceed $1,000.00 or by both a fine and imprisonment.

There is no grandfather clause applicable to this ordinance, and no grandfather clause provided for in SB 861.

20.    While Defendant Los Angeles County is claiming they passed their ordinance under the police power , whether on its face it names one breed, several breeds, no breeds or 'all breeds'-- the **effect** is the same.. **Mandatory spay and neuter of all puppies at four months, unless owner and dog meet specific criteria.** At trial Plaintiffs will prove mandatory spay and neuter is detrimental and dangerous at the age cited and at all ages- does not serve a rational basis legitimate governmental purpose. Further, the conditional breeding permits are impermissibly regulated by the same agency that seeks to curtail the actual breeding process, where that agency knows nothing about canine breeding. The law calls for a criminal offense if one breeds a dog outside of the law, regardless of how the law was passed. Furthermore, Plaintiff American Canine Foundation already has an affected member in Los Angeles which has been harmed by the law.

21.    Defendants, Sun, CDHS and CHHSA are all responsible to ensure that San Francisco, Los Angeles County, or any other county in California which implements a mandatory spay/neuter program based off legislation such as SB861, properly report

the relevant bite statistics under SB 861; if they do not, said Defendants are mandated to, and  have the authority to demand compliance; Plaintiff is informed and believes that Sun can directly enforce compliance, which would include legal action, if necessary.

22.    There  is  no  scientific  evidence  that  any  breed  of  dog  is  inherently dangerous.  This  was  proven  in  the  State  of  Ohio  in  the  case  of <u>City of Toledo v. Tellings</u>, a case *that Plaintiff's brought to* <u>*trial and in several other*</u> <u>cases in the United States in the last four years.</u>  *In the Tellings* case, the Ohio Court of Appeals for the Sixth District  concluded  that  pit  bulls  are  not  inherently  dangerous  or  vicious  and  struck  down ordinances  that  discriminated  against  pit  bulls  as  unconstitutional  on  three  separate grounds.

23.    The concept of forced/mandated surgical altering of canines (for <u>non-shelter</u> animals)  is  *heavily pushed by the radical animal rights group* 'People for the Ethical  Treatment  of  Animals'  (PETA).   PETA,  an  organization  with  known  terrorist links,   has  killed  over  10,000  homeless  dogs  and  cats  at  its  Virginia  based "shelter," and is  ***dedicated to eliminating pet ownership in the United States***, **as they believe animals are 'not commodities.' and should never be bred, or sold**.    PETA and other activist groups backed and  advocated  directly,  to help pass SB 861.

Several PETA employees are facing approximately 63 felony charges for having killed and dumped "rescued" puppies and kittens taken from other animal groups, where PETA assured such groups that the pets *would be placed* in new homes.  Plaintiffs,  at trial,  will prove spay and neutering of canines at four months of age is dangerous to the health of the young puppies.

Laws passed under SB861 and under the police powers following passage of SB861, **all** call for early spay and neuter at four months of age; formerly mandatory spay/neuter was mandated *only* for shelter dogs.

24.     Standing in staunch opposition to SB 861 and any other laws mandating spay and neuter for canines at an early age, were Plaintiff, American Canine Foundation, major dog registries, professional canine behaviorists, dog owners, dog-related businesses, well-known scientific groups involved with canines and others.

The State of California, however, sided with the extreme animal rights groups, including PETA ----- and ignored SB 861's credible opponents who had credible factual data against the proposed laws.

25.     SB 861, the Los Angeles ordinance, and ordinances arising out of SB861 do not provide for any appeal process, and as a direct and foreseeable result, cities and counties either have not or will not provide for a constitutionally sound appellate process. For example, in San Francisco, a "staff member" of the San Francisco Animal Care and Control ("SFACC") will make the determination of whether a person owns a pit bull. The only "appeal" from that staff member's decision is an appeal to the "Director [of SFACC] "or his/her designee." That person's decision "is final," even if it is completely erroneous.

In Los Angeles County the Director of Animal Control appoints a hearing officer, the rules of evidence are left in control of LA County Animal Control, and dog owners in violation of the unconstitutional breeding laws can face a criminal penalty without

10

receiving a fair trial, therefore,  all aspects of due process are  left to the discretion of LA County Animal Control.

26.     SB 861,  the Los Angeles ordinance, and  ordinances arising out of SB861 will not accomplish any of the so-called goals, stated or unstated.  It will not protect the safety of California's citizens; it will not improve the quality of their lives and it will not reduce dog bites or aggressive dogs.

What it will accomplish, among other things, is more dogs being abandoned, excessive cost overruns for the government, more dogs ending up in shelters and dog pounds, more dogs being euthanized, more discrimination against dog owners and their dogs, and less compliance with existing animal control laws, such as licensing and registration.

Using flawed data, Los Angeles is attempting to convince the general public that mandatory early altering of canines (**not shelter dogs**) is the proper action to take, despite the common sense knowledge that stopping well-bred dogs from being placed in homes,  *has absolutely nothing to do with animal shelter populations*, which have decreased *statewide*.   **IN FACT, Sacramento and Bay Area rescues currently import approximately 100 dogs plus-- due to LACK of adoptable dogs!!**

Plaintiff can easily show these facts and more at trial.

Los Angeles County's mandatory spay and neuter breeding law will not protect the public, it is based on flawed data and discriminates while doing nothing to reduce problems associated with dangerous dogs. Los Angeles County's law will cause shelter

impounds to increase while targeting responsible breeders, yet doing nothing to stop irresponsible breeding.

27.   SB861 is in direct conflict with the Animal Welfare Act (AWA) found in 7 U.S.C § 2131 and the rules promulgated by the Secretary of Agriculture regarding breeding of dogs.  SB 861 is also unconstitutional under both the Federal and California Constitution as more fully alleged in this complaint.

**FIRST CLAIM FOR RELIEF**
**FEDERAL ANIMAL WELFARE ACT PREEMPTION**

28.   The factual allegations in the foregoing paragraphs are incorporated by reference.

29.   The Animal Welfare Act (AWA) authorizes the Secretary of Agriculture to establish standards regarding the handling, housing, and transportation of animals.  These requirements provide rules regarding the licensing and registration of dealers, exhibitors and animal research facilities.  *(7. U.S.C. 2131 et seq.)*.  Section 2.1(a)(3)(iii) titled *Requirements and Application Exemption from Licensing* exempts licensing for breeders who have a minimal number of dogs breeding.

30.   SB 861 and ordinances originally based on the legislation-- are in direct conflict with federal law.  The AWA rules allow for the breeding of minimal numbers of dogs without requiring licensing whereas SB 861 and its radical change in prior law not only permits, but encourages municipalities to pass mandatory spay/neuter laws for non-

shelter animals.   The passage of laws similar to the San Francisco and Los Angeles

County ordinances **is likely to continue as long as SB 861 remains the law of**

**California**, and Los Angeles County's law remains the law; these are laws that ignore,

shun and disregard federal law. At trial Plaintiffs will prove allegations in the first claim

for relief.


## SECOND CLAIM FOR RELIEF
## VIOLATION OF FEDERAL AND STATE RIGHTS
## TO PROCEDURAL DUE PROCESS


31.    The factual allegations in the foregoing paragraphs are incorporated by

reference.

32.   The Fourteenth Amendment requires states to provide due process to citizens

and non-citizens within its jurisdiction. The Fourteenth Amendment also binds the Bill of

Rights to the States. This Amendment states in part that "no state shall make or enforce

any law which shall...deprive any person of life, liberty or property without due process

of law..."

33.    SB 861 and the ordinances arising out of it and Los Angeles County's

ordinance violate procedural due process because these laws allows for citizens to be

subjected to criminal sanctions and loss of their property (often beloved family dogs)

without a *hearing to determine if a dog is dangerous or before seizing the dog or a true*

*right* of appeal.    SB 861, the ordinances arising out of it and Los Angeles County's

ordinance will likely result in the killing of family pets, immediately, if the pet's owner

does not comply with the government's forced sterilization order.

Plaintiffs at trial, will prove with scientific evidence that spay and neuter as required by SB861, San Francisco and Los Angeles County's ordinances, is harmful for canines and dangerous to their health.

34.     Further, the necessary proof to convict under these laws would require proof beyond a reasonable doubt, which is <u>impossible</u> in application because neither animal control nor law enforcement can identify specific breeds or mixed breeds beyond a reasonable doubt; this will lead to arbitrary and discriminatory criminal charges against dog owners.

35.     SB 861, the ordinances arising out of it and Los Angeles County's law violate the Federal and California Constitutions, which prohibit unreasonable searches and seizures because their application allows municipalities to arbitrarily inspect the premises of a licensed dog owner to make sure that the standards required to receive a permit are met. Plaintiffs at trial,  will proved the laws addressed in this complaint were passed using flawed data.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF FEDERAL AND STATE RIGHTS**
**TO SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION**

36.     The factual allegations in the foregoing paragraphs are incorporated by reference.

37.     SB 861 the ordinances arising out of it and Los Angeles county's law violate substantive due process and equal protection.  These laws will continue to bring

about arbitrary, unreasonable and discriminatory law enforcement and they serve no legitimate government purpose.  The means the government adopts must be suitable to the ends in view, they must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation. Plaintiffs at trial, will prove the laws addressed in this complaint were passed using flawed evidence and data.

38.     Where a statute or ordinance is challenged on nonprocedural grounds as violative of due process, the test is whether there is some fair, just and reasonable connection between the statute and the promotion of the health, comfort, safety and welfare of society. Neither SB 861 nor the San Francisco or Los Angeles County ordinances will promote any of these governmental goals, they serve no legitimate governmental purpose and should be struck down as unconstitutional because they were passed using flawed data.

**FOURTH CLAIM FOR RELIEF**
**SB 861 AND THE ORDINANCES BASED UPON IT**
**ARE EX POST FACTO LAWS**

39.     The factual allegations in the foregoing paragraphs are incorporated by reference.

40.     The United States Constitution Article I, §§ 9 and 10, prevents the federal and state governments from enacting *ex post facto* laws.

41.     SB 861 as amended and LA County's law allows  municipalities to criminalize dog owners who have not spayed or neutered their dogs, or owners who have not complied with any number of other rules, requirements or regulations imposed on

them by municipalities pursuant to the broad grant of power and authority provided by SB 861 and the police power in LA County.

Defendants city and county of San Francisco and Los Angeles County have utilized that broad grant of power in passing their unconstitutional and unlawful ordinances. Los Angeles County's law---- although allegedly  under the 'police power'--- is no different than SB861 in its effect or results.    Plaintiffs will prove Los Angeles County supported SB861, waited until it passed, then through a course of changes (to avoid litigation), passed a law claiming it fell under the police power; yet the law **creates** *the very same end result as that of  SB861*---namely, it *mandates* EARLY spay/neutering for canines which are not shelter animals, at the very same early age of four months, if not sooner.

42.    SB 861,  the ordinances arising out of it,  and Los Angeles County's law are *ex post facto* laws because they impose penalties for acts committed before the law was passed and that were legal at the time, without allowing an exemption for dogs that were purchased or owned prior to the implementation of these laws. At trial plaintiffs will prove the laws addressed in this complaint serve no legitimate government purpose and will in no way protect the public, contrary to the city and county's preferred intent.

//

## FIFTH CLAIM FOR RELIEF
## THE ENACTMENT OF SB 861
## AND THE ORDINANCES ARISING OUT OF IT
## VIOLATE THE NO TAKING CLAUSE
## OF THE UNITED STATES CONSTITUTION

43.     The factual allegations in the foregoing paragraphs are incorporated by reference.

44.     The Fifth Amendment of the United States Constitution prohibits the deprivation of life, liberty, or property, without due process of law and prohibits private property from being taken for public use without just compensation.   The states are bound by the Fifth Amendment as made applicable to the States through the Due Process Clause of the Fourteenth Amendment.

45.     Many California citizens have large financial and time investments in training, planning, showing and providing for their dogs.   Californians, including those who participate in the purebred dog shows, and hobby breeders, will be deprived of their property interests if they are forced to neuter or sterilize their dogs. Once any dog is surgically altered, its economic capacity is irreparably lost if it was to be used as breed stock.   This in effect, is a taking.   Moreover, an altered dog may not be shown in United Kennel Club, American Dog Breeders Association or American Kennel Club events.   Therefore, owners of these expensive dogs would lose all rights and opportunities to show the dog, breed the dog, or further the line of a champion dog due to the mandatory altering.

Breeders that produce reasonably priced, well-bred dogs (not necessarily show dogs)  would be unable to offer these dogs to the public, which in turn will cause more defective dogs to be placed into the stream of commerce as underground breeders, puppy mill dogs, and third world strays take their place.

In 2005,  $35.7 billion dollars was generated by the canine industry in the United States. Laws like SB861 and the law Los Angeles County passed will open the door for more puppy mills, and <u>defective</u> canines, while doing nothing to target irresponsible breeders.

These laws actually would be creating problems which <u>contradict the intent of the laws</u> themselves–that is, the laws will encourage the sale of dogs and puppies which are NOT registered with specific breed registries, because those show dogs which are continuously <u>shown for competition</u>,  are far too expensive for the average dog owner. When such dogs (dogs from responsible breeders) cannot be placed into the market, this will cause serious damage to the Dog Fancy, resulting in the taking of valuable property based on a law that was passed with false information and flawed data.   Further, it makes such pets unavailable to the general public, thereby <u>increasing</u> the demand for such pets through avenues of questionable origin (such as puppymills, dogs from Mexico, dogs imported from third world countries, dogs sold on the internet for which recourse is limited, and prosecution is almost non-exsistent.)

46.   Those supporting   legislation involving MANDATORY canine altering are basically the Animal <u>RIGHTS</u> movement (<u>not</u> animal welfare),  which include extremist/radical groups known for eco-terrorist links.

18

The elimination of canine ownership and breeding altogether of canines is a known, vocal GOAL of such animal RIGHTS groups. As an example, the animal rights radical group in Los Angeles used smoke bombs on an Animal Control employee's home in order to get this employee to step down from his job.  They were successful and the employee quit his job.    *Is  this  the type of group that the government should be listening to when bringing new laws into effect?*

Plaintiffs have  proof beyond a reasonable doubt to support the allegations made in this complaint and will present that proof at the time of trial.

Furthermore, while proponents of  mandated spay/neuter claim this will stop dangerous dogs, aggressive dogs, and dog bites, the facts show that in the recent past, that shelter dogs and re-homed dogs have actually CAUSED a significant number of the FATAL ATTACKS against humans.

Since shelter and rescued /re-homed dogs are usually already *altered*, obviously there is a very big FLAW in the entire concept that "early spay/neuter" will eliminate "DANGEROUS DOGS". Plaintiff can and will easily prove this at trial without any doubt whatsoever.

### SIXTH CLAIM FOR RELIEF
### ENACTMENT OF LAW VIOLATES FEDERAL COMMERCE CLAUSE

47.        The factual allegations in the foregoing paragraphs are incorporated by reference.

19

48.     The United States Constitution Article 1 Section 8, Clause 3 of the United States Constitution (Commerce Clause) empowers the United States government to "regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes."

49.     SB 861 and the ordinances arising out of it and Los Angeles County's law substantially affect interstate commerce.  The Supreme Court in *United States v. Lopez, 514 U.S. 549 (1995)* held that Congress has the power to regulate the channels of commerce, the instrumentalities of commerce, and any action that substantially affects interstate commerce.

50.     The enactment and application of SB 861, the ordinances arising out of it and Los Angeles County's law adversely affect the flow of business commerce as it relates to the sale of well-bred canines originating from California to the rest of the United States. **The pet industry is a  $35.7 billion dollar industry which has a huge commerce flow across the nation. The unsafe and unreasonable mandatory altering <u>of all canines,</u> (not just shelter dogs)  is not only contradictory, but based upon false data and media hype, all of which will be shown at trial.**  California is home to many canine kennels and many well-bred dogs originate from California, selling and shipping canines outside the state would be adversely and significantly affected, if not eliminated, due to the mandatory altering of the breeds targeted by SB861 and Los Angeles County's laws.

51.     The application of SB 861, the ordinances arising out of it and Los Angeles County's law  would substantially affect interstate and intrastate travel because

20

affected dog owners could no longer participate in sanctioned dog events, as many shows and events do not allow canines that have been altered. **Reducing the number of well-bred canines overall does absolutely nothing to promote the eradication of dangerous dogs or dog bites.**

It should be noted that simply placing a dog in a breed registry does NOT indicate nor guarantee that  the dog has a good temperament.    This can easily be proven at trial.

52.    Further, each municipality can enact a completely different ordinance, which could result in dog owners being in compliance with the law in one municipality and in violation of it in the next.  At trial plaintiffs will prove the laws addressed in this complaint were passed using flawed data and that Plaintiffs members are suffering from present harm and will be harmed in the future. *Babbitt v United Farm Workers Union*, 422 U.S. 289, 298 (1979).

## SEVENTH CLAIM FOR RELIEF
## FREEDOM OF CONTRACT

53.    The factual allegations in the foregoing paragraphs are incorporated by reference.

54.     The enactment and application of SB 861 and Los Angeles county's law infringes on the business of selling canines in California and thus to the rest of the United States. Plaintiffs members will be harmed by the laws addressed in this complaint.

//

21

**EIGHTH CLAIM FOR RELIEF**
**SB 861 AND THE ORDINANCES ARISING OUT OF IT**
**ARE UNCONSTITUTIONALLY VAGUE**

55.     SB 861, the ordinances arising out of it and Los Angeles County's law were so poorly drafted it is impossible for the ordinary citizen to understand what they purport to do.  SB 861 is being misused and misinterpreted by municipalities, and is leading and will continue to lead to, unintended and unfortunate consequences including, but not limited to the killing of family pets, false accusations against those who own breeds that "look like" breeds targeted pursuant to SB 861; as for Los Angeles County's law, *arbitrary* arrests and prosecutions of dog owners as a result of the inability of dog owners to register their dogs with a specific 'registry', while  animal control enforcement goes house to house looking for intact dogs.  This has already taken place in Los Angeles County and Plaintiff can prove this fact. Further, Plaintiffs will prove at trial animal control agencies cannot identify certain breeds of canines beyond a reasonable doubt if certain specific breeds are targeted.

**NINTH CLAIM FOR RELIEF**
**SB 861 AND THE ORDINANCES ARISING OUT OF IT**
**INCLUDING THE SAN FRANCISCO AND**
**LOS ANGELES COUNTY ORDINANCES**
**ARE UNCONSTITUTIONAL IN THAT THEY**
**VIOLATE THE FREEDOM OF ASSOCIATION**
**PROTECTION AFFORDED BY THE FIRST AMENDMENT**
**OF THE FEDERAL CONSTITUTION**

56.     SB 861,  the ordinances arising out of it and LA County's law violate the right to freedom of association under the First Amendment by requiring affiliations with

specific groups or organizations in order to fit within one of the exemptions provided for. In all cases Plaintiffs members will be forced to join a specific breed club, in many cases Plaintiff's members may be denied the right to join a breed club and be forced to seek an alternative remedy which will not be available, Plaintiffs members are being harmed at this time because of SB861, San Francisco and Los Angeles County's law addressed in this complaint. At trial plaintiffs will bring forward members who have been harmed by the unconstitutional breeding sterilization laws.  At trial Plaintiff's will prove the laws addressed in this complaint were passed using flawed data.

## TENTH CLAIM FOR RELIEF
## VIOLATION OF CALIFORNIA'S CONSTITUTION

57.    The factual allegations in the foregoing paragraphs are incorporated by reference.

58.    California Constitution Section 1 states that "All people are by nature free and independent and have inalienable rights.  Among these are enjoying or defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

59.     SB 861 and the ordinances arising out of it and Los Angeles County's law violate the California Constitution Article 1 § 1 because they allow municipalities to in effect restrict dog owners from possessing canines capable of reproduction and protecting the inherent value of such canines, which are considered property.

60.    California Constitution Article 1 § 7(a) states that "a person may not be deprived of life, liberty or property without due process of law or denied equal protection

23

of the laws."

61.     SB 861 in its application allows municipalities such as the San Francisco to pass legislation that allows for the destruction of certain breeds upon the first violation of the statute without due process.  Los Angeles County's law which  was passed after SB861 was passed into law,  also end in the same result with destruction of canines on a first violation without being declared dangerous.

62.     SB 861 and the ordinances arising out of it and Los Angeles County's law violate California Constitution Article 1 § 9 regarding *ex post facto* laws because they impose penalties for an act committed before the law was passed and that was legal at the time without allowing an exemption for dogs that were purchased or owned prior to the law's implementation.

63.     SB 861 and the ordinances arising out of it and Los Angeles County's law violate California Constitution Article 1 Section 13 against unreasonable searches and seizures because its application allows municipalities to arbitrarily inspect the premises of a licensed dog owner to make sure that the standards required to receive a permit are met.  Plaintiffs at trial will prove the laws addressed in this complaint were passed using flawed data.

//

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.      Assert jurisdiction over this lawsuit;

2.      Declare SB 861 and Los Angeles County's law unconstitutional;

3.      Declare SB 861 to be in conflict with and in violation of the Animal Welfare Act;

4.      Declare San Francisco Ordinance Number 268-05 unconstitutional;

5.      Declare Title 10 of the Los Angeles County Code unconstitutional;

6.      Declare San Francisco Ordinance Number 268-05 to be in conflict with and in violation of the Animal Welfare Act;

7.      Declare Title 10 of the Los Angeles County Code to be in conflict with and in violation of the Animal Welfare Act;

8.      Issue an Order for prospective injunctive relief preventing the application of SB 861 or the enforcement of any laws drafted as a result of its enactment, including but not limited to San Francisco Ordinance Number 268-05 and Title 10 of the Los Angeles County Code drafted under police powers;

9.      Allow Plaintiff to proceed to trial by jury if requested;

1

2

3

4

5

     10.     Award Plaintiff its court costs, fees and other disbursements associated with the filing and maintenance of this action, including but not limited to reasonable attorney's fees under 42 U.S.C. 1982, 1983 and 1988 or other applicable law;

6

7

     11.     That the Court exercise continuing jurisdiction during the enforcement of relief;

8

9

     12.     Any other relief that this Court deems just and proper.

10

11

DATED:  July 22, 2006

12

13

14

By__/s/_____

    Carolyn Chan, Esq.
    Attorney for Plaintiff,
    American Canine Foundation

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26