IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CANINE FOUNDATION, | No. C-06-4713 MMC |
| Plaintiff, | **ORDER GRANTING CITY AND COUNTY OF SAN FRANCISCO'S MOTION TO DISMISS** |
| v. | |
| BEN SUN, D.V.M., the Public Health Veterinarian for the State of California, et al., | (Docket No. 18) |
| Defendants. | |

Before the Court is the motion by defendant City and County of San Francisco ("City"), seeking dismissal of the claims asserted against it, for lack of standing and failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff American Canine Foundation ("ACF") has filed opposition to the motion; the City has filed a reply. For the reasons set forth below, the Court rules as follows.

## BACKGROUND

In the instant action, ACF challenges, inter alia, the legality of San Francisco Ordinance No. 268-05 ("Ordinance"),[1] which added sections to the San Francisco Health

---

[1] ACF also challenges the legality of California Senate Bill 861 ("SB861") and Title 10 of the Los Angeles County Code. The Court previously has dismissed all causes of action relating to SB861. (See Order Granting State Defendants' Motion to Dismiss

Code prohibiting the ownership of unsterilized pit bulls, subject to certain exceptions.  See Second Amended Complaint ("SAC") ¶ 1; see also Request for Judicial Notice ("RJN") Ex. D (Ordinance).  In particular, San Francisco Health Code § 43.1 provides:  "No person may own, keep, or harbor any dog within the City and County of San Francisco that the person in possession knew, or should have known, was a pit bull that has not been spayed or neutered," subject to certain exceptions.  See San Francisco Health Code § 43.1.  The itemized exceptions are: (1) the pit bull is under eight weeks of age; (2) the pit bull cannot be spayed or neutered without a high likelihood of suffering serious bodily harm or death due to a physical abnormality; (3) the pit bull has been present in San Francisco for a period of less than thirty days; (4) the owner of the pit bull has submitted an application for a breeding permit; (5) the owner has appealed the City's determination that the dog is a pit bull; or (6) the pit bull is a registered show dog.  See id.

Plaintiff contends the Ordinance: (1) is preempted by the federal Animal Welfare Act ("AWA"), (see id. ¶¶ 28-30); (2) violates federal and state constitutional rights to procedural due process, (see id. ¶¶ 31-35); (3) violates federal and state constitutional rights to substantive due process and equal protection, (see id. ¶¶ 36-38); (4) is an ex post facto law in violation of Article I, §§ 9 and 10, of the United States Constitution, (see id. ¶¶ 39-42); (5) violates the Takings clause of the Fifth Amendment to the United States Constitution, (see id. ¶¶ 43-46); (6) adversely affects interstate commerce in violation of the Commerce Clause of the United States Constitution, (see id. ¶¶ 47-52); (7) violates "freedom of contract" by "infring[ing] on the business of selling canines in California and thus to the rest of the United States," (see id. ¶¶ 53-54); (8) is "unconstitutionally vague," (see id. ¶ 55); (9) violates the right to freedom of association under the First Amendment to the United States Constitution, (see id. ¶ 56); and (10) violates the California Constitution, (see id. ¶¶ 57-63).

**LEGAL STANDARD**

---

Second Amended Complaint, filed Feb. 16, 2007.)  The County of Los Angeles has separately moved to dismiss the claims relating to Title 10 of the Los Angeles County Code; the Court will address that motion by separate order.

2

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part of the complaint, however, may be considered. See id. Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992). Courts are not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation and citation

3

omitted).

## DISCUSSION

The City moves to dismiss all causes of action asserted against it for failure to state a claim, and, with respect to the eighth and tenth causes of action only, lack of standing.

### A. AWA Preemption

As noted, the Ordinance permits ownership of an unsterilized pit bull if, inter alia, the owner has obtained a breeding permit. See San Francisco Health Code § 43.1(d). The Ordinance further provides, "No person shall cause or allow any pit bull . . . that is owned, harbored or kept within the City . . . to breed or give birth without first obtaining a permit[.]" See id. § 44(a). In the first cause of action, ACF alleges the Ordinance is preempted by the AWA because "[t]he AWA rules," and, in particular, 9 C.F.R. § 2.1, "allow for the breeding of minimal numbers of dogs without requiring licensing[.]" (See SAC ¶ 30.) The City moves to dismiss the first cause of action, arguing the AWA does not preempt the Ordinance.

The purposes of the AWA are: "(1) to insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment; (2) to assure the humane treatment of animals during transportation in commerce; and (3) to protect the owners of animals from the theft of their animals by preventing the sale or use of animals which have been stolen." See 7 U.S.C. § 2131. Pursuant to the AWA, "dealers" and "exhibitors" of animals, subject to various exceptions, are required to obtain a license from the Secretary of Agriculture ("Secretary"). See 7 U.S.C. § 2134; 9 U.S.C. § 2.1(a)(1). One exception to the licensing requirement is for "[a]ny person who maintains a total of three (3) or fewer breeding female dogs . . . and who sells only the offspring of these dogs . . . which were born and raised on his or her premises, for pets or exhibition[.]" See 9 C.F.R. § 2.1(a)(3)(iii).

Plaintiff has cited no authority suggesting that the AWA was intended to preclude state and local regulation of animals. Indeed, the statute itself expressly contemplates such state and local regulation. See 7 U.S.C. § 2143(a)(8) ("Paragraph (1) [providing Secretary 'shall promulgate standards to govern the humane handling, care, treatment, and

transportation of animals by dealers, research facilities, and exhibitors'] shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary."). Moreover, the few cases that have considered whether the AWA preempts local regulation of animal ownership, breeding, or sale have found no preemption, and the Court finds such authority persuasive. See DeHart v. Town of Austin, 39 F.3d 718, 722 (7th Cir. 1994) (holding "it is clear that the Animal Welfare Act does not evince an intent to preempt state or local regulation of animal or public welfare" and "expressly contemplates state and local regulation of animals"; rejecting AWA preemption challenge to local ordinance barring ownership of dangerous animals); Kerr v. Kimmell, 740 F. Supp. 1525, 1529-30 (D. Kan. 1990) (rejecting AWA preemption challenge to state licensing scheme for sale and breeding of dogs because "Congress anticipated that states would remain active in this area of traditional state interest").

Accordingly, the Court will GRANT the City's motion to dismiss the first cause of action.

**B. Procedural Due Process**

In the second cause of action, ACF alleges the Ordinance violates the right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution because it "allows for citizens to be subjected to criminal sanctions and loss of their property (often beloved family dogs) without a hearing to determine if a dog is dangerous or before seizing the dog or a true right of appeal." (See SAC ¶ 33.)

The Ordinance provides that "[a] first violation may result in the Department impounding the pit bull and disposing of the pit bull," but also sets forth a procedure by which the owner of the dog may reclaim the dog by paying specified charges and arranging for the dog to be neutered or spayed. See San Francisco Health Code § 43.2(a). If the dog owner disputes the Department's determination that the dog is a pit bull and, thus, is subject to the Ordinance, "s/he may request a hearing before the Department's Director or his/her designee"; the hearing must be held within 30 days, "may be informal and rules of evidence not strictly observed," and the "decision of the Director or his/her designee is

1 final." See San Francisco Health Code § 43(b).

2 The City moves to dismiss the second cause of action, arguing that the Ordinance "does not seek to penalize people for having a dangerous dog, so there is no reason to have a hearing on whether the dog is dangerous." (See Motion at 9.) Rather, as noted, the Ordinance bars ownership of unspayed or unneutered pit bulls, subject to certain exceptions, and provides for seizure of any such dog until either (1) the owner makes arrangements to have the dog spayed or neutered, or (2) the dog is determined not to be a pit bull.

The Supreme Court has held that "the requirements of due process are flexible and call for such procedural protections as the particular situation demands[.]" See Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (internal quotation and citation omitted). In considering whether the procedure for enforcement of a law complies with due process, courts consider "three distinct factors":

> First, the private interest that will be affected by the official actions; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

See id.

With respect to the first factor, the Supreme Court long ago held that "[e]ven if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens." See Sentell v. New Orleans & C.R. Co.,166 U.S. 698, 703 (1897); see also Nichia v. People of the State of New York, 254 U.S. 228, 230 (1920) ("Property in dogs is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any federal right."). Accordingly, the "private interest that will be affected by the official actions," see Wilkinson, 545 U.S. at 224, is not substantial.

With respect to the second factor, "the risk of an erroneous deprivation," see id. at 224-225, plaintiff does not allege that there is any difficulty in determining whether a dog is spayed or neutered, but, rather, alleges that "neither animal control nor law enforcement can identify specific breeds or mixed breeds beyond a reasonable doubt." (See SAC ¶ 34.) Thus, taking plaintiff's allegation as true, there is at least some risk that dogs that are not pit bulls may be required to be spayed or neutered under the Ordinance.

With respect to the third factor, "the Government's interest," see Wilkinson, 545 U.S. at 225, the Supreme Court, as noted, has held that all dogs may "be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens." See Sentell, 166 U.S. at 703. The ordinance here at issue was enacted in response to the "mauling and killing of a 12 year old child in San Francisco by two pit bulls," and Mayor Newsom's subsequent directive "to review and assess potential measures that the City could take to minimize the chances of such attacks occurring in the future." (See RJN Ex. A at 3.) As set forth in Sentell, the government's interest in the safety of its citizens outweighs the interests of private citizens in dog ownership.

ACF cites no authority even suggesting, much less holding, that in light of the government's strong interest in the safety of its citizens, the lesser property interests of dog owners in their dogs, and the availability under the Ordinance of a procedure by which dog owners can challenge the designation of a dog as a pit bull, due process requires the City to enact more stringent procedures to reduce the risk that dogs that are not pit bulls are found to be subject to the Ordinance.

Accordingly, the Court will GRANT the City's motion to dismiss the second cause of action.

**C. Equal Protection**

In its third cause of action, ACF alleges the Ordinance violates the rights to substantive due process and equal protection under the 14th Amendment to the United States Constitution because it "will continue to bring about arbitrary, unreasonable and discriminatory law enforcement" and "serve[s] no legitimate government purpose." (See

7

1 SAC ¶ 37.) ACF's argument with respect to arbitrary law enforcement is a variant of its
2 eighth cause of action, in which it asserts that the Ordinance is unconstitutionally vague.
3 Accordingly, the Court will consider such argument in connection with the eighth cause of
4 action.

5 With respect to the equal protection claim, the Supreme Court has held that "[i]n
6 areas of social and economic policy, a statutory classification that neither proceeds along
7 suspect lines nor infringes fundamental constitutional rights must be upheld against equal
8 protection challenge if there is any reasonably conceivable state of facts that could provide
9 a rational basis for the classification." See Federal Communications Commission v. Beach
10 Communications, Inc., 508 U.S. 307, 313 (1993). There is no contention here that pit bulls
11 or pit bull owners constitute a suspect class or that there is any fundamental constitutional
12 right involved in the neutering or spaying of dogs. Indeed, as noted, the Supreme Court
13 has held that dogs may "be destroyed or otherwise dealt with, as in the judgment of the
14 legislature is necessary for the protection of its citizens." See Sentell, 166 U.S. at 703.
15 Consequently, if "plausible reasons" exist for the enactment of the Ordinance, the court's
16 "inquiry is at an end." See Federal Communications Commission v. Beach
17 Communications, Inc., 508 U.S. at 313-14 (internal quotations and citation omitted).
18 "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of
19 legislative choices." See id. at 313.

20 Here, as noted, the Ordinance was enacted in response to the "mauling and killing of
21 a 12 year old child in San Francisco by two pit bulls," and Mayor Newsom's subsequent
22 directive "to review and assess potential measures that the City could take to minimize the
23 chances of such attacks occurring in the future." (See RJN Ex. A at 3.) The city's decision
24 to require spaying and neutering of pit bulls as a means of reducing the number of pit bulls
25 and, consequently, the number of pit bull attacks on children cannot be said to lack a
26 rational basis.

27 Accordingly, defendants' motion to dismiss plaintiff's Equal Protection claim will be
28 granted.

**D. Ex Post Facto Clause**

In the fourth cause of action, ACF alleges the Ordinance is an ex post facto law in violation of the federal Constitution because the Ordinance "impose[s] penalties for acts committed before the law was passed and that were legal at the time, without allowing an exemption for dogs that were purchased or owned prior to the implementation of these laws." (See SAC ¶ 42.)

Article I, § 10, of the United States Constitution provides that "[n]o State shall enter into any . . . ex post facto Law[.]" See U.S. Const. Art. I, § 10. An unconstitutional ex post facto law exists where the law (1) "makes an action done before the passing of the law, and which was innocent when done, criminal"; (2) "aggravates a crime, or makes it greater than it was, when committed"; (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed"; and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offen[s]e, in order to convict the offender." See Stogner v. California, 539 U.S. 607, 611 (2003) (internal quotation and citation omitted).

Here, contrary to ACF's allegation, the Ordinance does not purport to impose penalties for acts committed before the law was passed. As the City observes, "it is not a crime to have purchased an unsterilized pit bull before; it is simply a crime to fail to make sure the pit bull is sterilized now." (See Motion at 11:11-12) (emphasis in original).)

Accordingly, the Ordinance falls within none of the categories set forth in Stogner, and the City's motion to dismiss ACF's ex post facto claim will be granted.

**E. Takings Clause**

In the fifth cause of action, ACF alleges the Ordinance effects an unlawful taking in violation of the Fifth Amendment to the United States Constitution because "Californians, including those who participate in the purebred dog shows, and hobby breeders, will be deprived of their property interests if they are forced to neuter or sterilize their dogs." (See SAC ¶ 45.) ACF further alleges that "[o]nce any dog is surgically altered, its economic capacity is irreparably lost if it was to be used as breed stock" and that "an altered dog may

9

not be shown in United Kennel Club, American Dog Breeders Association or American Kennel Club events." (See id.)

As defendants point out, however, the Ordinance does not apply to show dogs or to dog owners who obtain a breeding permit. See San Francisco Health Code § 43.1(d), (e). Consequently, there can be no taking with respect to pit bull exhibitors and breeders. ACF offers no argument to the contrary and, indeed, fails to even mention its takings claim in its opposition.

Accordingly, the City's motion to dismiss ACF's takings claim will be granted.

**F. Commerce Clause**

In the sixth cause of action, ACF alleges the Ordinance violates the Commerce Clause of the United States Constitution because the Ordinance "substantially affect[s] interstate commerce." (See SAC ¶ 49.) In particular, plaintiff alleges, the Ordinance "adversely affect[s] the flow of business commerce as it relates to the sale of well-bred canines originating from California to the rest of the United States" and "substantially affect[s] interstate and intrastate travel because affected dog owners could no longer participate in sanctioned dog events, as many shows and events do not allow canines that have been altered." (See SAC ¶¶ 50-51.)

The Supreme Court has held "that the Constitution's express grant to Congress of the power to regulate Commerce among the several States contains a further, negative command, known as the dormant Commerce Clause, that creates an area of trade free from interference from the States." See American Trucking Associations, Inc. v. Michigan Public Service Commission, 545 U.S. 429, 433 (2005) (internal quotations and citations omitted). Local regulations of interstate commerce violate the dormant Commerce Clause if they "unjustifiably discriminate on their face against out-of-state entities," or "impose burdens on interstate trade that are clearly excessive in relation to the putative local benefits." See id. (internal quotation and citations omitted). As defendants point out, the Ordinance does not discriminate on its face against out-of-state entities, and imposes no burden on interstate trade; the Ordinance merely prohibits the ownership of unsterilized pit

bulls in San Francisco if they are not used for breeding and/or for show.[2]  See San Francisco Health Code § 43.1.

Additionally, local jurisdictions "may not impose taxes that facially discriminate against interstate businesses and offer commercial advantage to local enterprises," that "improperly apportion state assessments on transactions with out-of-state components," or that "have the inevitable effect of threatening the free movement of commerce by placing a financial barrier around the State."  See American Trucking Associations, Inc. v. Michigan Public Service Commission, 545 U.S. at 433.  Here, the Ordinance's imposition of a $100 fee for a pit bull breeding permit does not discriminate against interstate businesses; it does not address out-of-state transactions in any manner; nor can it be said to threaten the free movement of commerce by placing a financial barrier around the State.  As the Supreme Court observed in upholding a $100 fee imposed on trucks engaged in intrastate commercial hauling: "Nothing in our case law suggests that such a neutral, locally focused fee or tax is inconsistent with the dormant Commerce Clause."  See id. at 434.  Plaintiff submits no argument to the contrary.

Accordingly, defendants' motion to dismiss plaintiff's Commerce Clause claim will be granted.

**G.  Freedom of Contract**

As defendants observe, although ACF alleges in the seventh cause of action, titled "Freedom of Contract," that SB 861 and the Los Angeles County Code "infringe[ ] on the business of selling canines in California and thus to the rest of the United States," (see SAC ¶ 54), the seventh cause of action contains no such allegation with respect to the Ordinance.  Moreover, even if such allegation were included, the Ordinance does not "infringe on the business of selling canines," because it does not bar the sale or purchase of any dogs.

---

[2] As discussed above, the Ordinance contains express exemptions for owners of show dogs and owners who obtain a breeding permit.  See San Francisco Health Code § 43.1(d), (e).

11

**H. Vagueness**

In the eighth cause of action, ACF alleges the Ordinance is "unconstitutionally vague" because it is "so poorly drafted it is impossible for the ordinary citizen to understand what [it] purport[s] to do" and because "animal control agencies cannot identify certain breeds of canines beyond a reasonable doubt." (See SAC ¶ 55.) ACF further alleges the Ordinance will "bring about arbitrary, unreasonable and discriminatory law enforcement." (See id. ¶ 37.) The City moves to dismiss the eighth cause of action on two grounds: lack of associational standing and failure to state a claim.

**1. Standing**

An association, such as ACF, "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right;[3] (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." See Hunt v. Washington State Apple Advertising Commission, 432 U.S. at 343. The first two elements are constitutionally required, while the third element is merely prudential in nature. See United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555-56 (1996).

"It is settled beyond controversy that one whose conduct is clearly governed by a statute may not successfully challenge it for vagueness." U.S. v. Johnson, 952 F.2d 565, 579 (1st Cir. 1991) (citing Parker v. Levy, 417 U.S. 733, 756 (1974)). Thus, as the City argues, ACF has associational standing to challenge the Ordinance for vagueness only if at least one of its members lives in San Francisco and owns an unsterilized dog that does not clearly meet the Ordinance's definition of "pit bull." The complaint contains no such allegation; ACF alleges only that it "has active members that are residents in the State of California" and that its "members have been impacted and harmed by the laws addressed

---

[3] "The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action[.]" See Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 342 (1977) (internal quotation and citation omitted).

12

in [the] complaint." (See SAC ¶ 6.)

Accordingly, the City's motion to dismiss the eighth cause of action for lack of standing will be granted.

### 2. Failure to State a Claim

The City additionally moves to dismiss the eighth cause of action for failure to state a claim, on the ground that ACF cannot allege the Ordinance is impermissibly vague with respect to all types of dogs. "[A] party challenging the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications." See Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 972 (9th Cir. 2003) (internal quotation and citation omitted). Here, ACF does not allege the Ordinance is vague in its application to all types of dogs.

In any event, given that the Ordinance, on its face, applies to, inter alia, "any dog that is an American Pit Bull Terrier, American Staffordshire Terrier, [or] Staffordshire Bull Terrier" and provides that the "AKC and UKC standards for [those] breeds are listed on their websites as well as online through the Animal Care and Control Department's [ ] website," see San Francisco Health Code § 43(a), it is difficult to imagine, at least with respect to purebred specimens, how the breed could be identified more precisely in the Ordinance. Indeed, courts regularly have rejected vagueness challenges to ordinances, on similar grounds, albeit based on an evidentiary record. See, e.g., American Dog Owners Ass'n v. Dade County, Florida, 728 F. Supp. 1533, 1541-42 (S.D. Fla. 1989) (rejecting vagueness challenge to ordinance defining "pit bull" by reference to AKC and UKC standards); Colorado Dog Fanciers, Inc. v. City and County of Denver, 820 P.2d 644, 650-52 (Colo. 1991) (rejecting vagueness challenge to ordinance containing identical definition of "pit bull" as instant ordinance); Greenwood v. City of North Salt Lake, 817 P.2d 816 (Utah 1991) (rejecting vagueness challenge to ordinance applicable to, inter alia, American Staffordshire Terriers and Staffordshire Bull Terriers); State v. Anderson, 566 N.E. 2d 1224 (Ohio 1991) (rejecting vagueness challenge to ordinance applicable to "any dog that . . .

[b]elongs to a breed that is commonly known as a pit bull dog").[4]

Accordingly, as plaintiff fails to allege that the Ordinance is vague in its application to all types of dogs, defendants' motion to dismiss plaintiff's claim that the Ordinance is impermissibly vague in violation of due process will be granted.

### I. First Amendment Right to Freedom of Association

In the ninth cause of action, ACF alleges the Ordinance "violate[s] the right to freedom of association under the First Amendment by requiring affiliations with specific groups or organizations in order to fit within one of the exemptions provided for." (See SAC ¶ 56.) In particular, ACF alleges that "[i]n all cases," its members "will be forced to join a specific breed club[.]" (See SAC ¶ 56.)

As the City points out, the Ordinance does not require anyone to "join a specific breed club" or to join any other organization. ACF fails to even mention its First Amendment claim in its opposition.

Accordingly, defendants' motion to dismiss plaintiff's claim that the Ordinance violates the First Amendment will be granted.

### J. California Constitution

In the tenth cause of action, ACF alleges the Ordinance violates various provisions of the California Constitution. The City moves to dismiss the tenth cause of action in its entirety; ACF offers no argument in opposition other than to refer the Court to the allegations of the complaint. (See Opp. at 16:7-9.)

#### 1. Article I, § 1

ACF alleges the Ordinance violates Article I, § 1, of the California Constitution

---

[4] Although the Massachusetts Supreme Court and Ohio Court of Appeals have found certain pit bull ordinances to be unconstitutionally vague, those cases are distinguishable because neither court attempted to determine whether the ordinance at issue therein was impermissibly vague in all of its applications, and, thus, neither court applied the test for vagueness applicable in this Circuit. See American Dog Owners Ass'n v. City of Lynn, 404 Mass. 73 (1989); City of Toledo v. Tellings, 2006 WL 513946 (Ohio App. March 3, 2006). Additionally, the Court notes that the Tellings opinion has been stayed and accepted for review by the Ohio Supreme Court. See Toledo v. Tellings, 852 N.E.2d 186 (2006).

1  because it "restrict[s] dog owners from possessing canines capable of reproduction and
2  protecting the inherent value of such canines, which are considered property." (See SAC
3  ¶ 59.) Article I, § 1, of the California Constitution sets forth, inter alia, the "inalienable
4  rights" of "acquiring, possessing, and protecting property." See Cal. Const. Art. I, § 1.

   The City moves to dismiss ACF's tenth cause of action, to the extent it is based on Article I, § 1, on the ground that assuming, arguendo, pit bull owners have a property right in the reproductive capacity of their dogs,[5] the Ordinance "allows them to protect that right by registering as breeders." (See Motion at 17:23-25.) ACF offers no argument in response other than to point to the allegations of the complaint. (See Opp. at 16:7-9.)

   Accordingly, defendants' motion to dismiss plaintiff's claim that the Ordinance violates Article I, § 1, of the California Constitution will be granted.

### 2. Article I, § 9

   ACF further alleges, in the tenth cause of action, that the Ordinance is an ex post facto law in violation of Article I, § 9, of the California Constitution because it "impose[s] penalties for an act committed before the law was passed and that was legal at the time without allowing an exemption for dogs that were purchased or owned prior to the law's implementation." (See SAC ¶ 62.)

   Article I, § 9, provides that an "ex post facto law . . . may not be passed." See Cal. Const. Art. I, § 9. "Invalid ex post facto punishment occurs only when there are changes in law that (1) retroactively alter the definition of a crime or (2) retroactively increase the punishment for criminal acts." See People v. Huggins, 38 Cal. 4th 175, 212 (2006). As set forth above in the Court's discussion of plaintiff's claim that the Ordinance violates the ex post facto clause of the federal Constitution, the Ordinance does not retroactively make it unlawful to own an unsterilized pit bull.

   Accordingly, defendants' motion to dismiss plaintiff's claim that the Ordinance is an

---

[5] But see Katsaris v. Cook, 180 Cal. App. 3d 256, 264 n.3 (1986) ("It has long been the rule that the police power of the state permits it to regulate, even to the point of death, the lives of dogs.").

ex post facto law in violation of Article I, § 9, of the California Constitution will be granted.

### 3. Article I, § 13

ACF's final allegation, in support of the tenth cause of action, is that the Ordinance violates Article I, § 13, of the California Constitution, because, according to ACF, it permits the City "to arbitrarily inspect the premises of a licensed dog owner to make sure that the standards required to receive a permit are met." (See SAC ¶ 63.) Although not expressly alleged, ACF likely is referring to San Francisco Health Code § 44.1(c), which provides that "[t]he Department may on one or more occasions, up to a year after issuing [a breeding] permit, perform an inspection of the dogs' living quarters to ensure that the standards required to receive a permit are met." (See San Francisco Health Code § 44.1(c).)

Article I, § 13, of the California Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." See Cal. Const. Art. I, § 13.

The City moves to dismiss ACF's tenth cause of action, to the extent such cause of action is based on Article I, § 13, on the ground that ACF lacks standing to assert such cause of action because there is no allegation that any unreasonable search or seizure has occurred. As noted, ACF has associational standing to challenge the Ordinance only if, inter alia, at least one of its members has standing to sue in his own right. See Hunt v. Washington State Apple Advertising Commission, 432 U.S. at 343. An ACF member has standing to sue in his own right if, inter alia, he has suffered or is suffering an "injury in fact," i.e., an injury that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Here, there is no allegation that any ACF member has even applied for a breeding permit under the Ordinance, and, consequently, ACF lacks standing to challenge the Ordinance's inspection provision. See id.

Accordingly, defendants' motion to dismiss plaintiff's claim that the Ordinance

violates Article I, § 13, of the California Constitution will be granted.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is hereby GRANTED.

This order terminates Docket No. 18.

**IT IS SO ORDERED.**

Dated: March 21, 2007

MAXINE M. CHESNEY
United States District Judge