1

2

3

4

5

6

7

8                            IN THE UNITED STATES DISTRICT COURT

9                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    AMERICAN CANINE FOUNDATION,              No. C-06-4713 MMC

12                   Plaintiff,                **ORDER GRANTING COUNTY OF LOS
                                               ANGELES' MOTION TO DISMISS**
13        v.

14    BEN SUN, D.V.M., the Public Health
      Veterinarian for the State of California et al.,
15
                      Defendants
16    _____/

17

          Before the Court is the motion by defendant County of Los Angeles ("County"),

18    seeking dismissal of the claims asserted against it, for lack of standing and failure to state a

19    claim, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

20    Plaintiff American Canine Foundation ("ACF") has filed opposition to the motion; the City

21    has filed a reply.  For the reasons set forth below, the Court rules as follows.

22                                         **BACKGROUND**

23        In the instant action, ACF challenges, <u>inter alia</u>, the legality of Los Angeles

24    Ordinance No. 2006-0029 ("Ordinance"),[1] codified at Los Angeles County Code section

25    _____

26        [1]ACF also challenged the legality of California Senate Bill 861 ("SB861") and San
      Francisco Ordinance No. 268-05.  The Court previously dismissed all causes of action
27    relating to SB861 and to Ordinance No. 268-05.  (<u>See</u> Order Granting State Defendants'
      Motion to Dismiss Second Amended Complaint, filed February 16, 2007, and Order
28    Granting Defendant City and County of San Francisco's Motion to Dismiss Second
      Amended Complaint, filed March 21, 2007.)

10.08.155 et seq., which establishes a mandatory spay and neuter program for dogs and requires dogs over the age of four months to be implanted with an identifying microchip, subject to certain exceptions.  See Second Amended Complaint ("SAC") ¶ 1; see also Request for Judicial Notice ("RJN") Ex. 1 (Ordinance).  In particular, section 10.20.350 provides:  "No person may own, keep, or harbor a dog over the age of four months in violation of this section.  An owner or custodian of an unaltered dog must have the dog spayed or neutered or obtain an unaltered dog license in accordance with Section 10.20.355."  See Los Angeles County Code § 10.20.350.  An owner or custodian of an unaltered dog over the age of four months may obtain an unaltered dog license if the dog is one of the following: (1) a competition dog, as defined in section 10.08.095; (2) a dog used by a law enforcement agency for law enforcement purposes; (3) a qualified service or assistance dog, as defined in section 10.20.090; or (4) a dog that cannot be spayed or neutered without a high likelihood of suffering serious bodily harm or death due to age or infirmity, as defined in section 10.20.350(B).  See Los Angeles County Code § 10.20.355.

Plaintiff ACF contends the Ordinance: (1) is preempted by the federal Animal Welfare Act ("AWA"), (see SAC ¶¶ 28-30); (2) violates the federal and state constitutional rights to procedural due process, (see id. at ¶¶ 31-35); (3) violates federal and state constitutional rights to substantive due process and equal protection, (see id. at ¶¶ 36-38); (4) is an ex post facto law in violation of Article I, sections 9 and 10, of the United States Constitution, (see id. at ¶¶ 39-42); (5) violates the Takings Clause of the Fifth Amendment to the United States Constitution, (see id. at ¶¶ 43-46); (6) adversely affects interstate commerce in violation of the Commerce Clause of the United States Constitution, (see id. at ¶¶ 47-52); (7) violates "freedom of contract" by "infring[ing] on the business of selling canines in California and thus to the rest of the United States," (see id. at ¶¶ 53-54); (8) is "unconstitutionally vague," (see id. at ¶ 55); (9) violates the right to freedom of association under the First Amendment to the United States Constitution, (see id. at ¶ 56); and (10) violates the California Constitution, (see id. at ¶¶ 57-63).

1

**LEGAL STANDARD**

2       Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory

3 or the absence of sufficient facts alleged under a cognizable legal theory.  See Balistreri v.

4 Pacifica Police Dep't, 901 F. 2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2) of the Federal Rules

5 of Civil Procedure requires only "a short and plain statement of the claim showing that the

6 pleader is entitled to relief."  See Fed. R. Civ. P. 8(a)(2).  Consequently, "a complaint

7 attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."

8 See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  Nonetheless, "a

9 plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

10 labels and conclusions, and a formulaic recitation of the elements of a cause of action will

11 not do."  See id. at 1965.  "Factual allegations must be enough to raise a right to relief

12 above the speculative level[.]"  Id.

13       Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any

14 material beyond the complaint.  See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896

15 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  Documents whose contents are alleged in the

16 complaint, and whose authenticity no party questions, but which are not physically attached

17 to the pleading may be considered, however.  See Branch v. Tunnell, 14 F. 3d 449, 454

18 (9th Cir. 1994).  In addition, a district court may consider any document "the authenticity of

19 which is not contested, and upon which the plaintiff's complaint necessarily relies,"

20 regardless of whether the document is referred to in the complaint.  See Parrino v. FHP,

21 Inc., 146 F. 3d 699, 706 (9th Cir. 1998).  Finally, the Court may consider matters that are

22 subject to judicial notice.  See Mack v. South Bay Beer Distributors, Inc., 798 F. 2d 1279,

23 1282 (9th Cir. 1986).

24       In analyzing a motion to dismiss, a district court must accept as true all material

25 allegations in the complaint, and construe them in the light most favorable to the

26 nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F. 2d 896, 898 (9th Cir. 1986).

27 Nevertheless, a court may disregard factual allegations if such allegations are contradicted

28 by the facts established by reference to exhibits attached to the complaint.  See Durning v.

1   First Boston Corp., 815 F. 2d 1265, 1267 (9th Cir. 1987).  Further, conclusory allegations,

2   unsupported by the facts alleged, need not be accepted as true.  See Holden v. Hagopian,

3   978 F. 2d 1115, 1121 (9th Cir. 1992).  Courts "are not bound to accept as true a legal

4   conclusion couched as a factual allegation."  See Twombly, 127 S. Ct. at 1965 (internal

5   quotation and citation omitted).

6                                             **DISCUSSION**

7        The County moves to dismiss all causes of action asserted against it for lack of

8   standing and failure to state a claim.

9      **A.  Standing**

10        The County's first argument in support of dismissal of all causes of action asserted

11   against it is that ACF has failed to adequately allege standing.  The burden is on ACF, the

12   plaintiff, "clearly to allege facts demonstrating that [it] is a proper party to invoke judicial

13   resolution of the dispute."  See United States v. Hays, 515 U.S. 737, 743 (1995) (internal

14   quotation and citation omitted).

15        An association, such as ACF, "has standing to bring suit on behalf of its members

16   when: (a) its members would otherwise have standing to sue in their own right;[2] (b) the

17   interests it seeks to protect are germane to the organization's purpose; and (c) neither the

18   claim asserted nor the relief requested requires the participation of individual members in

19   the lawsuit."  See Hunt, 432 U.S. at 343.  The first two elements are constitutionally

20   required, while the third element is merely prudential in nature.  See United Food and

21   Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555-56 (1996).

22        The County contends ACF has failed to adequately plead any of the three elements

23   of the above-referenced test.

24         **a.  First Element**

25        An ACF member has standing to sue in his own right if (1) he has suffered an "injury

26

27       [2] "The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action[.]"  See Hunt v.

28   Washington State Apple Advertising Commission, 432 U.S. 333, 342 (1977) (internal quotation and citation omitted).

in fact" that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical," (2) the injury is traceable to the challenged action of the defendant and not the result of the independent action of a third party not before the Court, and (3) it is likely that the injury will be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation and citation omitted).

The County contends ACF's allegations are insufficient to allege standing, as ACF "has not identified a specific member who is located within an area to which the ordinance applies; that is, within the unincorporated area of Los Angeles County, or in any contract city in the County which has adopted the ordinance." (See Motion at 7.)  ACF alleges it "is an organization based in the State of Washington, and has active members that are residents in the State of California." (See SAC ¶ 6.)  Although ACF also alleges that it "already has an affected member in Los Angeles which has been harmed by the law," (see SAC ¶ 20), nowhere in its complaint does ACF describe the nature of such "harm," see, e.g., Holden v. Hagopian, 978 F.2d at 1121 (holding conclusory allegations, unsupported by the facts alleged, need not be accepted as true), let alone describe an injury that is "concrete and particularized," see Lujan, 504 U.S. at 560.

Accordingly, ACF has not established the first element of the test for associational standing.

### b.  Second Element

The County further argues that ACF has not adequately demonstrated the second element of the test for associational standing, namely, that the "interests it seeks to protect are germane to the organization's purpose."  See Hunt, 432 U.S. at 343.  In particular, the County asserts that ACF "fails to define the purposes of its organization, and, therefore, has not alleged that the interests it seeks to protect are germane to the organization's purpose." (See Motion at 7.)

As the County notes, ACF does not expressly define the organization's purpose in its complaint.  ACF alleges, in conclusory fashion, that it "is an interested party to these proceedings due to the legal issues presented in this action involving its members' rights

and the protection of Constitutional rights and property." (See SAC ¶ 6.)  Although ACF

further alleges that prior to the enactment of SB 861 as state law, ACF, along with a

number of other organizations and individuals, took a position "in staunch opposition to SB

861 and any other laws mandating spay and neuter for canines at an early age," (see SAC

¶ 24),   ACF has not alleged such activity or the interests it seeks to protect herein, are

germane to its purpose.

Accordingly, ACF has not established the second element of the test for

associational standing.

### c. Third Element

The County further argues that ACF has failed to adequately allege the third element

of the test for associational standing, namely, that "neither the claim asserted nor the relief

requested requires the participation of individual members in the lawsuit."  See Hunt, 432

U.S. at 343.  In particular, the County argues that "the member(s) would be required to

participate, at a minimum, in discovery, in order to confirm or deny alleged losses of

property rights under the ten claims asserted."  (See Motion at 7.)

The County provides no authority for such argument, nor does it explain why such

an individualized inquiry is necessary to adjudicate ACF's claims for injunctive relief.  As

the Supreme Court has observed, "whether an association has standing to invoke the

court's remedial powers on behalf of its members depends in substantial measure on the

nature of the relief sought."  See Warth, 422 U.S. at 515.  Where an "association seeks a

declaration, injunction, or some other form of prospective relief, it can reasonably be

supposed that the remedy, if granted, would inure to the benefit of those members of the

association actually injured."  See id.  Thus, "individual participation is not normally

necessary when an association seeks prospective or injunctive relief for its members" but is

"required in an action for damages to an association's members."  See United Food, 517

U.S. at 546; see also Columbia Basin Apartment Association v. City of Pasco, 268 F.3d

791, 799 (9th Cir. 2001) (holding injunctive and declaratory relief "do not require

individualized proof"; finding third prong of Hunt test satisfied where plaintiff "sought only

1  injunctive and declaratory relief"); <u>Associated General Contractors v. Metropolitan Water</u>

2  <u>District of Southern California</u>, 159 F.3d 1178, 1181 (9th Cir. 1998) ("Individualized proof

3  from the members is not needed where, as here, declaratory and injunctive relief is sought

4  rather than monetary damages.").  Here, plaintiff seeks declaratory and injunctive relief and

5  does not assert any claims for damages.

6  Accordingly, the County has not demonstrated ACF has failed to establish the third

7  element of the test for associational standing.

8  **d.  Conclusion: Standing**

9  For the reasons stated above, ACF has failed to establish the first and second

10  elements of the test for associational standing, and, accordingly, the County's motion to

11  dismiss for lack of standing will be GRANTED.[3]

12  **B.  AWA Preemption**

13  As noted, the Ordinance permits ownership of an unaltered dog over the age of four

14  months if, <u>inter alia</u>, the owner has obtained an unaltered dog license.  <u>See</u> Los Angeles

15  County Code § 10.20.350.  In its First Claim for Relief, ACF alleges that the AWA preempts

16  the Ordinance because "[t]he AWA rules allow for the breeding of minimal numbers of dogs

17  without requiring licensing[.]"  (<u>See</u> SAC ¶ 30.)  The County moves to dismiss the first

18  cause of action on the ground that the Ordinance is not preempted by the AWA.  (<u>See</u>

19  Motion at 8.)

20  The purposes of the AWA are: "(1) to insure that animals intended for use . . . as

21  pets are provided humane care and treatment; (2) to assure the humane treatment of

22  animals during transportation in commerce; and (3) to protect the owners of animals from

23  the theft of their animals by preventing the sale or use of animals which have been stolen."

24  <u>See</u> 7 U.S.C. § 2131.

25  ACF has cited no authority suggesting that Congress intended the AWA to preclude

26

27          [3] Ordinarily, the Court would afford ACF leave to amend to remedy the above-
28  referenced deficiencies.  For the reasons stated <u>infra</u>, however, granting leave to amend
   would be futile.

state and local regulation of animals.  Indeed, the statute itself expressly provides for such regulation.  <u>See</u> 7 U.S.C. § 2143(a)(8) ("Paragraph (1) shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated . . . under paragraph (1).").[4]  Furthermore, the few cases that have considered whether the AWA preempts local regulation of animal ownership, breeding, or sale, have found no preemption.  <u>See, e.g.</u>, <u>DeHart v. Town of Austin</u>, 39 F.3d 718, 722 (7th Cir. 1994) (rejecting AWA preemption challenge to local ordinance barring ownership of dangerous animals; finding "it is clear that the Animal Welfare Act does not evince an intent to preempt state or local regulation of animals or public welfare" and "expressly contemplates state and local regulation of animals"); <u>Kerr v. Kimmel</u>, 740 F. Supp. 1525, 1529-30 (D. Kan. 1990) (rejecting AWA preemption challenge to state licensing scheme for sale and breeding of dogs; noting "Congress anticipated that states would remain active in this area of traditional state interest.").  The Court finds the reasoning of such cases persuasive.

Accordingly, the County is entitled to dismissal of ACF's second amended complaint to the extent it is based on AWA preemption.

### C. Procedural Due Process

In its Second Claim for Relief, ACF alleges the Ordinance violates the right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution, because it "allow[s] for citizens to be subjected to criminal sanctions and loss of their property (often beloved family dogs) without a hearing to determine if a dog is dangerous or before seizing the dog or a true right of appeal."  (<u>See</u> SAC ¶ 33.)

In its motion, the County argues that the reason the Ordinance "does not allow a hearing to determine if a dog is dangerous" is because "the issue is not dangerous dogs, it is unsterilized dogs."  (<u>See</u> Motion at 10.)  As the County points out, the Ordinance requires

---

[4] Paragraph (1) provides for the promulgation of standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors.  <u>See</u> 7 U.S.C. § 2143(a)(1).

1   that any dog over the age of four months be microchipped and spayed or neutered, unless

2   the dog is eligible for an unaltered dog license.  (See id.; see also RJN Ex. 1, at 18.)

3   Moreover, the Ordinance provides for notice of intent to deny or revoke, as well as a

4   hearing for purposes of appealing the denial or revocation of an unaltered dog license.

5   (See RJN Ex. 1, at 21-22.)

6        "The fundamental requirement of due process is the opportunity to be heard at a

7   meaningful time and in a meaningful manner."  See Mathew v. Eldridge, 424 U.S. 319, 333

8   (1976) (internal quotation and citation omitted).  In considering whether an enforcement

9   procedure complies with due process, courts look to several factors:

10        First, the private interest that will be affected by the official actions; second, the risk
          of an erroneous deprivation of such interest through the procedures used, and the
11        probable value, if any, of additional or substitute procedural safeguards; and finally,
          the Government's interest, including the function involved and the fiscal and
12        administrative burdens that the additional or substitute procedural requirement would
          entail.

13   See Wilkinson v. Austin, 545 U.S. 209, 224-25 (2005).

14        With respect to the first Wilkinson factor, the "private interest" at issue, see id. at

15   224, the Supreme Court has observed:  "Even if it were assumed that dogs are property in

16   the fullest sense of the word, they would still be subject to the police power of the state,

17   and might be destroyed or otherwise dealt with, as in the judgment of the legislature is

18   necessary for the protection of its citizens."  See Sentell v. New Orleans & C.R. Co., 166

19   U.S. 698, 703 (1897); see also Nicchia v. People of the State of New York, 254 U.S. 228,

20   230 (1920) ("Property in dogs is of an imperfect or qualified nature and they may be

21   subjected to peculiar and drastic police regulations by the state without depriving their

22   owners of any federal right.").  Consequently, any private interest in the ownership of

23   unaltered dogs is subject to more limited procedural protections.  See, e.g., Wilkinson, 545

24   U.S. at 225 (holding "procedural protections to which [prisoners] are entitled are more

25   limited than in cases where the right at stake is the right to be free from confinement at

26   all").

27        With respect to the second factor, "the risk of an erroneous deprivation," see id. at

28

9

224-25, ACF alleges that the Ordinance "will likely result in the killing of family pets, immediately, if the pet's owner does not comply with the government's forced sterilization order." (See SAC ¶ 33.)  The Ordinance, however, contains no provision pertaining to the destruction of dogs that are not spayed or neutered.  Rather, the penalties specified therein are (1) "a fine not to exceed $250" for the first violation; and (2) "imprisonment in the county jail for a period not to exceed six months or [ ] a fine not to exceed $1,000 or [ ]  both," for the second violation.  See Los Angeles County Code § 10.20.375.  Further, the Ordinance does not allow for "immediate" action.  Rather, it expressly provides for notice and a hearing for the purposes of appealing the denial or revocation of an unaltered dog license. (See RJN Ex. 1, at 21-22.)

With respect to the third factor, "the Government's interest," see Wilkinson, 545 U.S. at 225, the Supreme Court, as noted, has held that all dogs may "be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens."  See Sentell, 166 U.S. at 703.  Here, the County enacted the Ordinance in part to increase public safety, finding, after a public hearing, that "unsterilized dogs are more likely to stray," and that  "[s]tray dogs can bite or attack people or other animals, cause traffic accidents, spread disease, damage property and harm the quality of life for residents in a community." (See RJN Ex. 1, at 8.)

ACF cites no authority even suggesting, much less holding, that in light of the County's strong interest in public safety, the lesser property interests of dog owners in their dogs, and the availability under the Ordinance for notice and a hearing following revocation or denial of an unaltered dog license, due process requires the provision of additional or substitute process.

Accordingly, the County is entitled to dismissal of ACF's second amended complaint to the extent it is based on denial of procedural due process.

**D.  Equal Protection**

In its Third Claim for Relief, ACF alleges the Ordinance violates the rights to substantive due process and equal protection under the Fourteenth Amendment to the

1   United States Constitution.  Specifically, ACF alleges that the Ordinance "will continue to

2   bring about arbitrary, unreasonable and discriminatory law enforcement" and "serve[s] no

3   legitimate government purpose."  (See SAC ¶ 37.)  ACF's claim of arbitrary law

4   enforcement is directly related to its Eighth Claim for Relief, in which it asserts the

5   Ordinance is unconstitutionally vague.  Accordingly, the Court will consider such argument

6   in connection with the Eighth Claim for Relief.

7       The Court next turns to ACF's equal protection claim.[5]  "In areas of social and

8   economic policy, a statutory classification that neither proceeds along suspect lines nor

9   infringes fundamental constitutional rights must be upheld against equal protection

10  challenge if there is any reasonably conceivable state of facts that could provide a rational

11  basis for the classification."  See Federal Communications Commission v. Beach

12  Communications, Inc., 508 U.S. 307, 313 (1993).  "[E]qual protection is not a license for

13  courts to judge the wisdom, fairness, or logic of legislative choices."  See id.  ACF does not

14  contend the Ordinance's neutering or spaying requirement involves a suspect classification

15  or that there is any fundamental constitutional right involved in the neutering or spaying of

16  dogs.  Indeed, as noted, the Supreme Court has held that dogs may "be destroyed or

17  otherwise dealt with, as in the judgment of the legislature is necessary for the protection of

18  its citizens."  See Sentell, 166 U.S. at 703; see also Nicchia, 254 U.S. at 230 (holding

19  "[p]roperty in dogs . . . may be subjected to . . . drastic police regulations").  If "plausible

20  reasons" exist for the County's enactment of the Ordinance, the Court's "inquiry is at an

21  end."  See Federal Communications Commission, 508 U.S. at 313-14 (internal quotation

22  and citation omitted).  Here, as noted, the County's stated reasons for enacting the

23  Ordinance are to increase the safety of its citizens, to reduce animal overpopulation, and to

24  aid in animal identification and reunification.  (See RJN Ex. 1, at 8.)  Such reasons

25  constitute a rational basis for the legislation at issue.

26

27       [5] The County does not address ACF's equal protection claim, other than to state that
    the third claim "does not include an allegation relating to equal protection."  (See Motion at
28  11.)

11

1   Accordingly, the County is entitled to dismissal of ACF's second amended complaint

2   to the extent it is based on denial of equal protection.

3   **E.  Ex Post Facto Clause**

4   In its Fourth Claim for Relief, ACF alleges the Ordinance is an ex post facto law in

5   violation of the federal Constitution because the Ordinance "impose[s] penalties for acts

6   committed before the law was passed and that were legal at the time, without allowing an

7   exemption for dogs that were purchased or owned prior to the implementation of these

8   laws."  (See SAC ¶ 42.)

9   Article I, § 10 of the United States Constitution provides that "[n]o State shall enter

10  into any . . . ex post facto Law[.]"  See U.S. Const. Art. I, § 10.  An unconstitutional ex post

11  facto law exists where the law (1) "makes an action done before the passing of the law, and

12  which was innocent when done, criminal"; (2) "aggravates a crime, or makes it greater than

13  it was, when committed"; (3) "changes the punishment, and inflicts a greater punishment,

14  than the law annexed to the crime, when committed"; or (4) "alters the legal rules of

15  evidence, and receives less, or different, testimony, than the law required at the time of the

16  commission of the offen[s]e, in order to convict the offender."  See Stogner v. California,

17  539 U.S. 607, 612 (2003) (internal quotation and citation omitted).

18  Here, contrary to ACF's allegation, the Ordinance does not purport to impose

19  penalties for acts committed before the County passed the law.  As the County observes,

20  "[t]he LA Ordinance does not punish those dog owners or custodians who did not comply

21  with the law prior to its passage."  (See Motion at 13.)  Moreover, the Ordinance provides a

22  grace period to allow additional time for current dog owners and custodians to comply with

23  the law by having their dogs spayed or neutered or applying for unaltered dog licenses.

24  (See RJN Ex. 3, at 46.)

25  Accordingly, the County is entitled to dismissal of ACF's second amended complaint

26  to the extent it is based on a claim that the Ordinance constitutes an ex post facto law.

27  **F.  Takings Clause**

28  In its Fifth Claim for Relief, ACF alleges the Ordinance constitutes an unlawful taking

1   in violation of the Fifth Amendment to the United States Constitution, because

2   "Californians, including those who participate in the purebred dog shows, and hobby

3   breeders, will be deprived of their property interests if they are forced to neuter or sterilize

4   their dogs." (See SAC ¶ 45.) Further, ACF alleges, "[o]nce any dog is surgically altered, its

5   economic capacity is irreparably lost if it was to be used as breed stock" and "an altered

6   dog may not be shown in United Kennel Club, American Dog Breeders Association or

7   American Kennel Club events." (See SAC ¶ 45.)

8        The Fifth Amendment prohibits governmental "tak[ing]" of private property "for

9   public use without just compensation." See U.S. Const. amend. V.   "[W]here the

10  government merely regulates the use of property," rather than taking title thereto,

11  "compensation is required only if considerations such as the purpose of the regulation or

12  the extent to which it deprives the owner of the economic use of the property suggest that

13  the regulation has unfairly singled out the property owner to bear a burden that should be

14  borne by the public as a whole." See Yee v. City of Escondido, 503 U.S. 519, 522-23

15  (1992). Here, the Ordinance merely "regulates the use" of dogs, in that it requires owners

16  to spay or neuter their dogs or obtain unaltered dog licenses for them. ACF fails to allege

17  how either the purpose of the Ordinance, or the extent, if any, to which it deprives dog

18  owners (breeders or show dog owners) of the economic use of their dogs, unfairly targets

19  such owners. As the County notes, the Ordinance "does not single out a breed or a

20  geographical area. All dog owners within the jurisdiction of Los Angeles County . . . are

21  subject to it." (See Motion at 15-16.)

22       Further, the Ordinance does not require breeders or show dog owners to sterilize

23  their dogs. Indeed, the Ordinance expressly provides for the issuance of unaltered dog

24  licenses for "competition dogs," (see Motion at 14; see also RJN Ex. 1, at 19), which the

25  Ordinance defines as:

26      "[A] dog which is used to show, to compete or to breed, which is of a breed
        recognized by and registered with the American Kennel Club (AKC), United Kennel
27      Club (UKC), American Dog Breeders Association (ADBA), or other valid registry
        approved by the department and meets one of the following requirements," namely,
28      competes in a dog show or sporting competition once a year; has earned a

conformation, obedience, agility, or other title from a dog registry; or its owner is a member of a purebred dog breed club.

See Los Angeles County Code § 10.08.095.

Accordingly, the County is entitled to dismissal of ACF's second amended complaint to the extent it is based on violation of the Takings Clause.

### G. Commerce Clause

In its Sixth Claim for Relief, ACF alleges the Ordinance violates the Commerce Clause of the United States Constitution because the Ordinance "substantially affect[s] interstate commerce." (See SAC ¶ 49.) In particular, ACF alleges, the Ordinance "adversely affect[s] the flow of business commerce as it relates to the sale of well-bred canines originating from California to the rest of the United States" and "substantially affect[s] interstate and intrastate travel because affected dog owners could no longer participate in sanctioned dog events, as many shows and events do not allow canines that have been altered." (See SAC ¶¶ 50-51.) The County moves to dismiss the Sixth Claim for Relief on the grounds that the Ordinance "does not discriminate between interstate and intrastate commerce" and "any incidental effect on interstate commerce is not excessive in relation to the benefits of the ordinance." (See Motion at 16-17.)

The Commerce Clause expressly grants Congress the power to "regulate Commerce among the several States." See U.S. Const. Art. I, § 8, cl. 3. The Supreme Court has held that the Commerce Clause "contains a further, negative command, known as the dormant Commerce Clause." See American Trucking Associations, Inc. v. Michigan Public Service Commission, 545 U.S. 429, 433 (2005) (internal quotation and citation omitted). Local regulations that "unjustifiably discriminate on their face against out-of-state entities" or "impose burdens on interstate trade that are clearly excessive in relation to the putative local benefits" violate the dormant Commerce Clause. See id.

The Ordinance does not "unjustifiably discriminate on [its] face against out-of-state entities." See id. Rather, as the County notes, the Ordinance "regulates evenhandedly," in that it requires all dogs owned or kept within the County's jurisdiction be spayed or

14

1  neutered.  (See Motion at 16.)  Further, the Ordinance does not impose significant, if any,

2  burdens on interstate trade or travel; with respect to breeding, sale, and showing, the law

3  simply requires that the owner or custodian obtain an unaltered dog license.  (See RJN Ex.

4  1, at 19.)  "[S]uch a neutral, locally focused" regulation is consistent with the Commerce

5  Clause.  See American Trucking, 545 U.S. at 434 (finding no violation of dormant

6  Commerce Clause where trucking company that engaged in both interstate and intrastate

7  hauling challenged state law imposing $100 annual fee on trucks engaged in intrastate

8  hauling.)

9       Further, as noted, the purpose of the Ordinance is to "control animal overpopulation

10  and reduce the euthanasia rate," "reduce the incidence of public safety problems caused by

11  stray dogs," "reduce the cost to impound large numbers of stray dogs, and "aid in

12  identifying dogs."  (See Motion at 17; RJN Ex. 1, at 8-9, 13.)  As the Supreme Court has

13  observed, the Constitution does not "displace[ ] States' authority to shelter [their] people

14  from menaces to their health or safety."  See American Trucking, 545 U.S. at 434

15  (alteration in original; internal quotation and citation omitted).  Consequently, even if the

16  Ordinance could be said to impose some burden on interstate trade, any such incidental

17  burden is not excessive in relation to the above-stated local benefits.

18       Accordingly, the County is entitled to dismissal of ACF's second amended complaint

19  to the extent it is based on violation of the Commerce Clause.

20       **H.  Freedom of Contract**

21       In its Seventh Claim for Relief, ACF alleges that the Ordinance "infringes on the

22  business of selling canines in California and thus to the rest of the United States."  (See

23  SAC ¶ 54.)

24       The right to contract "is a part of the liberty protected by the due process clause."

25  See Advance-Rumely Thresher Co. v. Jackson, 287 U.S. 283, 288 (1932).  Nevertheless,

26  the right "is subject to such restraints as the state in exertion of its police power reasonably

27  may put upon it."  See id.  As noted, the Supreme Court has held that dogs are subject to

28  the police power of the state.  See Sentell, 166 U.S. at 703.  Here, the Ordinance does not

bar the sale and purchase of unaltered dogs, provided the owner or custodian includes an unaltered dog license number with the sale.  See Los Angeles County Code § 10.20.370. Moreover, as discussed above, the Ordinance was enacted in part to increase public safety.  Consequently, even if the Ordinance "infringes on the business of selling canines," (see SAC ¶ 54), the regulation falls squarely within the County's police powers.

Accordingly, the County is entitled to dismissal of ACF's second amended complaint to the extent it is based on violation of freedom of contract.

**I. Vagueness**

In its Eighth Claim for Relief, ACF alleges the Ordinance is unconstitutionally vague. Specifically, ACF claims the Ordinance is "so poorly drafted it is impossible for the ordinary citizen to understand what [it] purport[s] to do" and that "arbitrary arrests and prosecutions of dog owners" will result from "the inability of dog owners to register their dogs with a specific 'registry,' while animal control enforcement goes house to house looking for intact dogs."  (SAC ¶ 55.)  The County moves to dismiss the Eighth Claim for Relief on the ground ACF cannot allege the Ordinance is impermissibly vague, and further, that the Ordinance will not lead to arbitrary arrests.

"[A] party challenging the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications."  See Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 972 (9th Cir. 2003) (internal quotation and citation omitted). Here, ACF does not allege the Ordinance is vague in all its applications, nor could it do so. The Ordinance expressly and clearly applies to "[a]ll dogs over the age of four months," (see RJN Ex. 1 at 17-18), and, contrary to ACF's allegation, makes no reference to "house-to-house" searches.

The Court next turns to the allegation of arbitrary enforcement.  "A statute can be impermissibly vague . . . if it authorizes or even encourages arbitrary and discriminatory enforcement."  See Hill v. Colorado, 530 U.S. 703, 732 (2000).  Here, the Ordinance lists the specific grounds upon which an unaltered dog license may be denied or revoked: (1)

16

the applicant or licensee has not complied with the requirements for obtaining an unaltered

dog license; (2) the department has received at least one verified complaint that the

applicant or licensee has allowed a dog to run loose or escape, or has otherwise been

found to be neglectful of his or her dog; (3) the applicant or licensee has been previously

cited for violating a state law, county code, or other municipal provision relating to the care

and control of animals; (4) the unaltered dog has been adjudicated by a court or agency of

appropriate jurisdiction to be a potentially dangerous or vicious dog, or to be a nuisance

under Los Angeles County or state law; (5) any unaltered dog license held by the applicant

has been revoked; (6) a female unaltered dog has had more than one litter per year, or five

or more litters in her lifetime; (7) the license application is discovered to contain a material

misrepresentation of fact.  See Los Angeles County Code § 10.20.360.  Further, as noted,

the Ordinance sets forth the penalties for violations of the law: a first violation is "an

infraction punishable by a fine not to exceed $250"; a second violation is "a misdemeanor

punishable by imprisonment in the county jail for a period not to exceed six months or by a

fine not to exceed $1,000, or by both such fine and imprisonment."  See Los Angeles

County Code § 10.20.375.

In sum, the Ordinance clearly sets forth the requirements for obtaining an unaltered

dog license, the grounds for denying or revoking such license, and the penalties for

violations.  The Ordinance neither authorizes nor encourages arbitrary enforcement.

Accordingly, the County is entitled to dismissal of ACF's second amended complaint

to the extent it is based on a claim that the Ordinance is unconstitutionally vague.

**J. First Amendment Right to Freedom of Association**

In its Ninth Claim for Relief, ACF alleges the Ordinance "violate[s] the right to

freedom of association under the First Amendment by requiring affiliations with specific

groups or organizations in order to fit within one of the exemptions provided for."  (See SAC

¶ 56.)  In that regard, ACF alleges that "[i]n all cases [ACF's] members will be forced to join

a specific breed club."  (See SAC ¶ 56.)

"[A]mong the rights protected by the First Amendment is that to freedom of

association, and its corollary, the freedom from coerced association with groups holding

views with which the nonmembers disagree."  See Besig v. Dolphin Boating and Swimming

Club, 683 F.2d 1271, 1275 (9th Cir. 1981) (holding no First Amendment associational rights

implicated where nonmembers of swimming and boating clubs, who "need not join any

club," were granted access to club facilities on less favorable terms than those granted to

members).  Here, membership in a specific breed club is not the only way in which owners

of competition dogs can obtain unaltered dog licenses.  Rather, an unaltered dog license

may be obtained if the dog is registered with the American Kennel Club or other approved

registry and has "competed in at least one dog show or sporting competition . . . within the

last 365 days," or has "earned a conformation, obedience, agility . . . or other title from a

purebred dog registry."  See Los Angeles County Code § 10.08.095.  Further, owners of

unaltered dogs can comply with the Ordinance in other ways, namely, by having the dog

spayed or neutered, by obtaining confirmation from a veterinarian that the dog is unable to

spayed or neutered due to age or infirmity, or by providing documentation that the dog is a

law enforcement dog or qualified assistance dog.  See Los Angeles County Code §

10.20.355.  In sum, neither the benefits of an unaltered dog license nor compliance with the

Ordinance "depend[s] on club membership or club association."  See Besig, 683 F.2d at

1276.

Accordingly, the County is entitled to dismissal of ACF's second amended complaint

to the extent it is based on violation of the freedom of association.

**K.  California Constitution**

In its Tenth Claim for Relief, ACF alleges the Ordinance violates various provisions

of the California Constitution.  The County moves to dismiss the Tenth Claim for Relief in its

entirety.

### 1.  Article I, § 1

Article I, § 1, of the California Constitution provides that "[a]ll people are by nature

free and independent and have inalienable rights," including "enjoying and defending life

and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining

safety, happiness, and privacy." See Cal. Const. Art. I, § 1.  ACF alleges the Ordinance violates Article I, § 1, of the California Constitution because it "restrict[s] dog owners from possessing canines capable of reproduction and protecting the inherent value of such canines, which are considered property."  (See SAC ¶ 59.)

The County moves to dismiss on the ground that the Ordinance does not prevent all dog owners from owning dogs capable of reproduction and that its spaying and neutering requirement serves to "reduce the large hordes of stray dogs which affect the health, safety and welfare of the citizenry."  (See Motion at 21.)  In response to the Motion, ACF offers no argument other than to point to the allegations of the complaint.  (See Opp. at 18.)

Under California law, counties have "plenary power to provide and enforce such police, sanitary and other local regulations as they may determine shall be necessary for the health, peace, comfort and happiness of their inhabitants."  See In re Ackerman, 6 Cal. App. 5, 9-10, 18 (3d. Dist. 1907) (holding ordinance providing for destruction of unlicensed dogs did not unconstitutionally interfere with right to possess property; noting ordinance did not "either expressly or by implication, attempt to interfere with the ownership of dogs").  Here, the Ordinance's requirement that owners either spay or neuter their dogs or obtain unaltered dog licenses is a valid exercise of the County's police powers.

Accordingly, the County is entitled to dismissal of ACF's second amended complaint to the extent it is based on violation of Article I, § 1 of the California Constitution.

## 2. Article I, § 9

Article I, § 9 states that an "ex post facto law . . . may not be passed."  See Cal. Const. Art. I, § 9.  Under the California Constitution, "[i]nvalid ex post facto punishment occurs only when there are changes in the law that (1) retroactively alter the definition of a crime or (2) retroactively increase the punishment for criminal acts."  See People v. Huggins, 38 Cal. 4th 175, 212 (2006).

In response to the County's motion to dismiss ACF's Article I, § 9 claim, ACF does no more than point to its complaint.  (See Opp. at 18.)  In its complaint, ACF alleges that the Ordinance is an ex post facto law in violation of Article I, § 9 of the California

Constitution because it "impose[s] penalties for an act committed before the law was passed and that was legal at the time without allowing an exemption for dogs that were purchased or owned prior to the law's implementation."  (See SAC ¶ 62.)  As discussed earlier in connection with Article I, § 10 of the United States Constitution, the Ordinance does not retroactively make it unlawful to own an unsterilized dog.

Accordingly, the County is entitled to dismissal of ACF's second amended complaint to the extent it is based on violation of Article I, § 9 of the California Constitution.

### 3.  Article I, § 13

Article I, § 13 of the California Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches."  Cal. Const. Art. I, § 13.  ACF's final allegation is that the Ordinance violates Article I, § 13 because it "allows municipalities to arbitrarily inspect the premises of a licensed dog owner to make sure that the standards required to receive a permit are met."  (See SAC ¶ 63.)

The County moves to dismiss on the ground the Ordinance "does not include a provision for the inspection of dog owner's premises."  (See Motion at 22.)  In response, ACF again simply points to the allegations of its complaint.  Having reviewed the Ordinance in detail, the Court finds no language either expressly or impliedly providing for inspection of an owner's premises.

Accordingly, the County is entitled to dismissal of ACF's second amended complaint to the extent it is based on violation of Article I, § 13 of the California Constitution.

//
//
//
//
//
//
//

20

**CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss is hereby GRANTED, and the second amended complaint is hereby dismissed without leave to amend.

**IT IS SO ORDERED.**


Dated: November 27, 2007

MAXINE M. CHESNEY
United States District Judge

21